ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2023-Jan-30  16:02:01
60CV-23-741
C06D12 : 8 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### _____ DIVISION

**IRA NICHOLSON**                                                    **PLAINTIFF**

**VS.**                          **CASE NO. 60CV-23-\_\_\_\_**

**GEICO CHOICE INSURANCE COMPANY**                 **DEFENDANT**

---

### COMPLAINT

---

COMES NOW the Plaintiff, Ira Nicholson, by and through his attorneys, Rainwater, Holt & Sexton, P.A., and for his Complaint against the Defendant, GEICO Choice Insurance Company, states and alleges the following:

### I.      RESIDENCY AND PARTIES

1.      Plaintiff Ira Nicholson was at all times relevant a citizen and resident of Little Rock, Pulaski County, Arkansas.

2.      Defendant GEICO Choice Insurance Company was at all times relevant a foreign corporation registered and licensed to sell insurance in the State of Arkansas, with its principal place of business at One GEICO Plaza, Washington, DC 20076.  They may be served through their registered agent for service, CT Corporation System, 124 West Capitol Avenue, Suite 1900,

Little Rock, AR 72201-3736.

3.     The incident giving rise to this cause of action occurred at 3601 S. Bryant Street, Little Rock, Pulaski County, Arkansas.

## II.     JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to Ark. Code Ann. § 16-13-201(a), which provides that circuit courts shall have original jurisdiction of all actions and proceedings for the redress of civil grievances except where exclusive jurisdiction is given to other courts.

5.     This claim is also brought pursuant to this Court's jurisdiction over breach of contract claims, such jurisdiction is granted by Ark. Code Ann. § 16-13-201 and § 16-56-111.

6.     Venue is proper pursuant to Ark. Code Ann. § 23-79-204, which provides that actions brought in this state by an insured against an insurer as to a loss occurring or benefits or rights provided under an insurance policy shall be brought in either the county in which the loss occurred or the county of the insured's residence at the time of the loss. In this case, the loss occurred in Pulaski County and Plaintiff, the insured, lived in Pulaski County.

## III.     BASIC PREMISE

7.     This is a breach of contract case which arises from a motor vehicle insurance policy contract entered into by the parties. Said underlying insurance policy contract contains underinsured motorist coverage in the amount of $100,000.00 per person. Despite Plaintiff's demand to GEICO to

make a reasonable offer of settlement pursuant to the policy terms and conditions, GEICO has refused Plaintiff's request and demand.

### IV.   FACTS

8.   On or about June 13, 2022, at approximately 4:00 p.m., Mr. Nicholson was walking southbound through the parking lot leaving his place of employment when he was struck by the front of the tortfeasor's vehicle as it sped through the parking lot.

9.   Plaintiff Nicholson was insured by GEICO Choice Insurance company under a written contract of insurance, Policy No. 600-27-47-69 ("the GEICO Policy"). Pursuant to such written contract of insurance, Ira Nicholson agreed to pay certain premiums for such insurance. At all times relevant to this action, Ira Nicholson timely paid the premiums required.

10.   At the same time, Tortfeasor Walter Richard ("Tortfeasor Richard") was driving a 2019 Nissan Altima westbound speeding through the parking lot while looking at another vehicle pulling out.

11.   Upon information and belief, Tortfeasor Richard failed to keep a proper lookout by failing to observe Plaintiff crossing the parking lot.

12.   Tortfeasor Richard thereby struck Plaintiff Nicholson with the front of his vehicle, knocking him to the ground.

13.   As a result of the collision, Mr. Nicholson sustained personal injuries and damages.

14.   Tortfeasor Richard was negligent in the following

particulars:

a.    Driving in such a careless manner as to evidence a failure to keep a proper lookout for other traffic, in violation of Ark. Code Ann. § 27-51-104(a);

b.    Driving in such a careless manner as to evidence a failure to maintain proper control, in violation of Ark. Code Ann § 27-51-104(a), (b)(6), & (b)(8);

c.    Driving at a speed greater than was reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, in violation of Ark. Code Ann. § 27-51-201(a)(1);

d.    Operating a vehicle in such a manner which would cause a failure to maintain control, in violation of Ark. Code Ann. § 27-51-104(b)(6);

e.    Driving in a manner that was inattentive and such inattention was not reasonable and prudent in maintaining vehicular control, in violation of Ark. Code Ann. § 27-51-104(b)(8);

f.    Failing to keep his vehicle under control, in violation of the common law of Arkansas;

g.    Failing to drive at a speed no greater than was reasonable and prudent under the circumstances, having due regard for any actual or potential hazards, in violation of the common law of Arkansas; and

h.    Otherwise failing to exercise ordinary care under the circumstances.

## V.    CAUSE OF ACTION – BREACH OF CONTRACT

15.    At the time of the incident complained of herein, Plaintiff Ira Nicholson had in effect with GEICO a policy of insurance with underlying UIM coverage ("the GEICO policy").  Attached hereto as Exhibit "A" is a copy of said certified policy of insurance with GEICO Choice Insurance Company, Policy

No. 600-27-47-69. The GEICO policy provided that, in the event Plaintiff Ira Nicholson should be involved in an incident caused by the negligence of an underinsured motorist, his damages would be compensated in an amount not to exceed the limits of said underlying UIM coverage ($100,000.00).

16.    Plaintiff Ira Nicolson paid an additional premium to GEICO for this coverage, and GEICO accepted this premium.

17.    Under the terms of the GEICO policy, Tortfeasor Richard was an underinsured motorist.

18.    Under the terms of the GEICO policy, GEICO has a duty to pay benefits to the Plaintiff in a sum consistent with his damages, subject to limits.

19.    The Plaintiff has requested reasonable settlement offers and that GEICO pay within the underlying UIM limits of $100,000.00 pursuant to the terms of the policy, but GEICO has refused Plaintiff's request and demand.

20.    As part of its valuation process, GEICO has "devalued" the Plaintiff's claims and has not fully considered some and/or all of the medical expenses Plaintiff has incurred because of the negligence of Tortfeasor Richard.

21.    There is no legitimate legal basis for GEICO's continuing failure to comply with the terms of the GEICO policy.  GEICO is in breach of the insurance policy contract.

## VI.    PROXIMATE CAUSATION

22.    The negligence of Tortfeasor Richard, an underinsured motorist, was an actual and proximate cause of the incident described herein and of the personal injuries and damages sustained by the Plaintiff.

23.    GEICO's refusal to pay reasonable settlement under the policy UIM coverage is the actual and proximate cause of the breach of the insurance policy contract between the Plaintiff and GEICO, and Plaintiff's damages related thereto.

## VII.    INJURIES AND COMPENSATORY DAMAGES

24.    All of the allegations previously plead herein are re-alleged as though stated word-for-word.

25.    Plaintiff Nicholson sustained personal injuries and damages as a result of the incident of June 13, 2022.

26.    Mr. Nicholson is entitled to the following damages:

a.    The nature, extent, duration, and permanency of his injuries;

b.    The full extent of the injuries he sustained;

c.    The expense of his medical care, treatment, and services received, including transportation, board and lodging expenses, and those expenses that are reasonably certain to be required in the future;

d.    Any pain, suffering, and mental anguish experienced in the past and reasonably certain to be experienced in the future;

e.    The value of any earnings, earning capacity, profits, or salary lost in the past and that are reasonably certain to be

lost in the future;

f.    the inability to participate in and/or enjoy his livelihood, hobbies, and recreational activities in the past and reasonably certain to be unable to participate in and/or enjoy in the future; and

g.    The visible results of his injuries

27.    Additionally, the Plaintiff is entitled to damages in the amount of 12% of the awarded damages from the underinsured motorist claim, plus a reasonable attorney's fee for the prosecution and collection of the loss, pursuant to Ark. Code Ann. Section . § 23-79-208, and pre and post judgment interest, and costs and expenses for prosecuting said claims.

28.    The injuries and damages described herein have been suffered in the past and will be continuing in the future.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

29.    Mr. Nicholson hereby demands a trial by jury.

## IX.    <u>DEMAND AND PRAYER</u>

30.    WHEREFORE, Plaintiff prays that he recover judgment against Defendant for the underlying underinsured motorist benefits limit ($100,000.00); pre and post judgment interest at the maximum rate allowed by law; for all expenses and costs; 12% penalty of the awarded damages pursuant to Ark. Code Ann. Section . § 23-79-208; reasonable attorney's fees; and for all other relief to which they may be entitled.

Respectfully submitted,


*/s/Karen J. Hughes*
Karen J. Hughes
Arkansas Bar No. 89132
Rainwater, Holt & Sexton, P.A.
P.O. Box 17250
Little Rock, Arkansas 72222-7250
Phone:         (501) 868-2500
Facsimile:    (501) 868-2505
E-Mail:  khughes@rainfirm.com
*Counsel for Plaintiff*

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2023-Jan-30  16:02:01
60CV-23-741
C06D12 : 36 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT:    CIRCUIT COURT OF PULASKI COUNTY

Docket/Case Number: _____

CASE NAME:
PLAINTIFF/
PETITIONER:        IRA NICHOLSON

DEFENDANT/
RESPONDENT:        GEICO CHOICE INSURANCE COMPANY

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)):        EXHIBIT A

*Administrative Order No 2.
    (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

C E R T I F I E D

I, N. Gant, Claims Coverage Underwriter of Geico Choice Insurance Company a corporation organized and existing under the laws of the state of Nebraska, do hereby certify that the attached Policy Declarations Page was printed from records retained in our computer data files. The amendments, endorsements, and policy contract are standard forms with information particular to this policy. Attached is a copy of policy contract number 6009-27-47-69 in the name of ANGELA C NICHOLSON AND IRA NICHOLSON for Renewal effective 03-29-22, issued on 02-23-22, and in effect on 06-13-22.

_____

N. Gant
Claims Coverage Underwriter

January 23, 2023

Sensitivity: Confidential



**Tel:** 1-800-841-3000

geico.com

**GEICO Choice Insurance Company**
One GEICO Center
Macon, GA 31295-0001

# Declarations Page
This is a description of your coverage.
Please retain for your records.

## Policy Number: 6009-27-47-69
## Coverage Period:
03-29-22 through 09-29-22
12:01 a.m. local time at the address of the named insured.

Date Issued: February 23, 2022

ANGELA C NICHOLSON AND IRA
NICHOLSON
3901 POTTER ST
LITTLE ROCK AR 72204

Email Address: annwebb3901@gmail.com

| **Named Insured** | **Additional Drivers** |
|---|---|
| Angela C Nicholson | None |
| Ira Nicholson | |

| **Vehicles** | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|
| 1 2011 Infi M | JN1BY1AP6BM326922 | LITTLE ROCK AR 72204 | |
| 2 2005 Acura RL | JH4KB16575C016602 | LITTLE ROCK AR 72204 | |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** | **Vehicle 2** |
|---|---|---|---|
| Bodily Injury Liability Each Person/Each Occurrence | $100,000/$300,000 | $286.23 | $268.09 |
| Property Damage Liability | $50,000 | $221.92 | $229.90 |
| Uninsured Motorists Bodily Injury Each Person/Each Occurrence | $100,000/$300,000 | $25.41 | $20.38 |
| Uninsured Motorist Property Damage | $50,000 $200 Ded | $29.12 | $29.12 |
| Underinsured Motorist Each Person/Each Occurrence | $100,000/$300,000 | $20.33 | $20.33 |
| Comprehensive (Excluding Collision) | $1,000 Ded | $111.82 | - |
| Collision | $1,000 Ded | $423.62 | - |
| Emergency Road Service | Full | $13.12 | - |
| Rental Reimbursement | $30 Per Day $900 Max | $17.96 | - |

| Coverages* | Limits and/or Deductibles | Vehicle 1 | Vehicle 2 |
|---|---|---|---|
| **Six Month Premium Per Vehicle** | | **$1,149.53** | **$567.82** |
| **Total Six Month Premium** | | | **$1,717.35** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

### Discounts

| **The total value of your discounts is** | **$704.18** |
|---|---|
| Anti-Theft | $11.98 |
| Anti-Lock Brake | $22.30 |
| Good Driver | $115.28 |
| Multi-Vehicle Discount | $393.56 |
| Persistency | $70.65 |
| Sponsored Marketing | $90.41 |

**The following discounts have also been applied**

| Driving Experience | Included |
|---|---|
| Financial Responsibility | Included |

**Contract Type:**  FAMILY

**Contract Amendments:**  ALL VEHICLES - A30AR(01-21) SIGPGCW(07-20)

**Unit Endorsements:**  A449(01-21) (VEH 1,2); A190(01-21) (VEH 1,2); A115S(08-20) (VEH 1); A431(05-11) (VEH 1)

---

## Important Policy Information

- Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

- You are receiving a $90.41 discount based on your membership in NATL. ASSOCIATION OF EDUCATIONAL OFFICE PROFESSIONALS.

- Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA, however, in Virginia coverage is limited for custom furnishings or equipment on pick-up trucks and vans but you may purchase coverage for this equipment. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

- A credit or discount has been applied to this policy:  Financial Responsibility.

- We welcome you to our GEICO family in the Auto Voluntary C10 rate program.

---

## Important Policy Information

- Claims incurred while an insured vehicle is being used to carry passengers for hire may not be covered by this contract. Please review the contract for a full list of exclusions and contact us if you plan to use any of your insured vehicles for this purpose.

- At your request, we will review your policy, which includes your savings and coverages. This review may also include evaluating major life changes, available discounts, driver safety courses and your credit-based insurance score.



**One GEICO Center**
**Macon, GA 31295-0001**
**Telephone: 1-800-841-3000**

# Arkansas Family Automobile Insurance Policy

**GEICO Choice Insurance Company**

**NOTICE**
In the repair of your covered motor vehicle under the physical damage coverage provisions of this policy, we may require or specify the use of motor vehicle parts not made by the original manufacturer. These parts are required to be at least equal in terms of fit, quality, performance, and warranty to the original manufacturer parts they replace.

# POLICY INDEX

Page

**SECTION I**
**Liability Coverages**.......................................... 3
**Your Protection Against Claims From Others**
Definitions
Losses We Will Pay For You
Additional Payments We Will Make Under The
Liability Coverages
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses

Exclusions: When Section I Does Not Apply
Persons Insured: Who Is Covered
Financial Responsibility Laws
Out Of State Insurance
Limits Of Liability
Other Insurance
Conditions
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

**SECTION II**
**Medical Payments Coverage**.......................... 7
**Protection For You And Your Passengers For**
**Medical Expenses**
Definitions
Payments We Will Make
Exclusions: When Section II Does Not Apply
Limit Of Liability
Other Insurance
Conditions
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

**SECTION III**
**Physical Damage Coverages**.......................... 9
**Your Protection For Loss Of Or Damage To Your Car**
Definitions
Losses We Will Pay
Comprehensive Coverage
Collision Coverage
Additional Payments We Will Make Under The
    Physical Damage Coverages
    Car Rental If Your Car Is Stolen
Exclusions: When The Physical Damage
    Coverages Do Not Apply
Limit Of Liability
Other Insurance

Page

Conditions
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation
    Assignment

**SECTION IV**
**Uninsured Motorists Coverage**.................... 13
**Your Protection For Injuries Caused By Uninsured**
**And Hit And Run Motorists**
Definitions
Losses We Pay
Exclusions: When Section IV Does Not Apply
Limits Of Liability
Other Insurance
Trust Agreement
Conditions
    Notice
    Assistance And Cooperation Of The Insured
    Action Against Us
    Proof Of Claim - Medical Reports
    Payment Of Loss
    Subrogation

**SECTION V**
**General Conditions**.................................... 16
**The Following Apply To All Coverages In This Policy**
Territory - Policy Period
Premium
Changes
Assignment
Cancellation By The Insured
Cancellation By Us
Cancellation By Us Is Limited
Renewal
Other Insurance
Dividend Provision
Declarations
Fraud And Misrepresentation
Examination Under Oath
Terms Of Policy Conformed To Statutes
Disposal Of Vehicle
Choice Of Law

**SECTION VI**
**Amendments And Endorsements**.............................. 19
Special Endorsement
    United States Government Employees

Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

**We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:**

## SECTION I - LIABILITY COVERAGES
### Bodily Injury Liability And Property Damage Liability
### Your Protection Against Claims From Others

### DEFINITIONS

The words bolded and italicized in Section I of this policy are defined below.

1.  *Auto business* means the business of selling, repairing, renting, leasing, brokering, servicing, storing, transporting or parking of autos.

2.  *Bodily injury* means bodily injury to a person, including resulting sickness, disease or death.

3.  *Farm auto* means a truck type vehicle with a gross weight of 15,000 pounds or less, not used for commercial purposes other than farming.

4.  *Insured* means a person or organization described under **PERSONS INSURED**.

5.  *Non-owned auto* means a *private passenger auto*, *farm auto*, *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relative*, except a *temporary substitute auto*. *You* or *your relative* must be using the *non-owned auto* or *trailer* within the scope of permission given by its owner. A *private passenger auto*, *farm auto*, *utility auto* or *trailer* rented or leased for more than 30 days will be considered as furnished for regular use. Two or more *private passenger autos*, *farm autos*, *utility autos* or *trailers* consecutively rented or leased, one after the other, for more than 30 consecutive days will be considered as furnished for regular use.

6.  *Owned auto* means:
    (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
    (b) A *trailer* owned by *you*;
    (c) A *private passenger auto*, *farm auto* or *utility auto*, ownership of which *you* acquire during the policy period, if:
        (i) it replaces an *owned auto* as defined in (a) above; or
        (ii) we insure all *private passenger autos*, *farm autos* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
    (d) A *temporary substitute auto*.

7.  *Personal vehicle sharing program* means a business, organization, network or group facilitating the sharing of private passenger motor vehicles for use by individuals or businesses.

8.  *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto.

9.  *Punitive or exemplary damages* means damages that are imposed to punish a wrongdoer and to deter others from similar conduct.

10. *Relative* means a person who continuously lives in *your* household, and is related to *you* by blood, marriage, or adoption (including a ward or foster child).

11. *Ride-sharing* means the use of any vehicle by any *insured* in connection with a *transportation network company* from the time an *insured* logs on to and signs in to any computer or digital application or platform that connects or matches driver(s) with passengers(s) until the time an *insured* logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

12. *Temporary substitute auto* means an automobile or *trailer*, not owned by *you* or a *relative*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.
    A *temporary substitute auto* does not include:
    (a) Any motor vehicle rented or leased by *you* or a *relative* for the purpose of providing *ride-sharing* services. A motor vehicle is considered to have been rented or leased for the purpose of providing *ride-sharing* services, whether actually used for *ride-sharing* or not, if the rental or lease agreement specifically allows the motor vehicle to be used for *ride-sharing* with a *transportation network company*; or

(b) Any motor vehicle rented or leased by **you** or a **relative** which is registered for use for **ride-sharing** with a **transportation network company**; or

(c) Any motor vehicle rented or leased by **you** or a **relative** which is approved for use for **ride-sharing** by a **transportation network company**; or

(d) Any motor vehicle rented or leased by **you** or a **relative** which displays an interior or exterior marking that identifies the motor vehicle as a vehicle for hire.

13. **Trailer** means a trailer designed to be towed by a **private passenger auto**, if not being used for business or commercial purposes with a vehicle other than a **private passenger auto**, **farm auto** or **utility auto**.

14. **Transportation network company** means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or fee.

15. **Utility auto** means a vehicle, other than a **farm auto**, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

16. **War** means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

17. **You** and **your** means only the individual(s) named in the **Declarations Page** as **Named Insured** and his or her spouse if a resident of the same household.

**You** and **your** does not include any individual(s) named in the **Declarations Page** as:

(a) **Additional Drivers**;

(b) **Additional Driver**; or

(c) Any other individual(s).

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an **insured** becomes legally obligated to pay because of:

1. **Bodily injury**, sustained by a person, and;

2. Damage to or destruction of property,

arising out of the ownership, maintenance or use of the **owned auto** or a **non-owned auto**. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. Investigative costs for services we specifically request for an **insured**. We do not pay fees or costs assessed against an **insured** pursuant to statute, court order, court rule or otherwise.

2. Legal services provided by an attorney we retain to represent an **insured** and any other legal services we retain to represent an **insured**.

3. We only pay post-judgment interest that begins to accrue after the entry of a final judgment against an **insured**, subject to all of the following:

(a) We only pay post-judgment interest on that part of the judgment that is against an **insured** and only for those damages that are covered under this Section; and

(b) We only pay post-judgment interest calculated on that part of the judgment against an **insured** that is within the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, we only pay post-judgment interest calculated on that part of the remaining applicable limit of liability under this Section; and

(c) We only pay post-judgment interest calculated up until the time we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section; and

(d) We do not pay post-judgment interest if we have not been given notice of suit or the opportunity to defend the **insured**.

4. We pay the premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments subject to all of the following:

(a) The amount bonded shall not exceed the applicable limit of liability under this Section. If the applicable limit of liability under this Section has been reduced by payment(s) of any other liability claims or judgments, the amount bonded shall not exceed the remaining applicable limit of liability under this Section.

(b) The amount bonded shall only be for those damages that are covered under this Section; and

(c) We do not pay premiums for bonds if we pay, offer to pay, or deposit in court the remaining applicable limit of liability under this Section; and

(d) We have no duty to apply for or furnish these bonds.

5. We will upon request by an **insured**, provide reimbursement for the following items:

(a) An **insured's** reasonable costs, up to $500, incurred when that **insured** provides and renders first aid to others at the time of an accident involving an **owned auto** or **non-owned auto**.

(b) An *insured's* loss of earnings up to $50 a day, but not other income, for each day an *insured* attends hearings and trials at our request.

(c) An *insured's* other reasonable costs incurred at our request. This does not include fees or costs assessed against an *insured* pursuant to statute, court order, court rule or otherwise.

(d) Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the use of an *owned auto* or *non-owned auto*, not to exceed $250 per bail bond. We have no duty to apply for or furnish these bonds.

## EXCLUSIONS

### Section I Does Not Apply:

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

1. *Bodily injury* to any *insured* or any *relative* of an *insured* residing in his household is not covered.
2. Section I does not apply to *bodily injury* or property damage arising out of the ownership, maintenance, or use of any motor vehicle while being used:
   (a) To carry passengers or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) For *ride-sharing*.
   However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered. An ordinary car pool is one where:
   (i) An *insured* receives no payment for using a vehicle for a car pool ride; or
   (ii) An *insured* receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an *insured* receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an *insured* is not required to be reported for income tax purposes.
3. *Bodily injury* or property damage caused intentionally by or at the direction of an *insured* is not covered.
4. We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.
5. *Bodily injury* or property damage arising from the operation of farm machinery is not covered.
6. *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.
   However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.
7. We do not cover *bodily injury* to a fellow employee of an *insured* if the fellow employee's *bodily injury* arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging use, ownership or maintenance of an auto by *you*.
8. We do not cover an *owned auto* while used by a person (other than *you* or a *relative*) when he is employed or otherwise engaged in the *auto business*.
9. A *non-owned auto* while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any *auto business*; (2) any other business or occupation of any *insured*, except a *private passenger auto* used by *you* or *your* chauffeur or domestic servant while engaged in such other business.
   However, coverage does apply to a *non-owned auto* used by *you*, *your* chauffeur or a domestic servant, while engaged in the business of an *insured*.
10. We do not cover damage to:
    (a) Property owned, operated, transported or used by an *insured*; or
    (b) Property rented to or in the charge of an *insured* other than a residence or private garage.
11. We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.
12. We do not cover:
    (a) The United States of America or any of its agencies;
    (b) Any person, including *you*, if protection is afforded under the provisions of the Federal Tort Claims Act.
13. *Bodily injury* or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.
14. Section I does not apply to:
    (a) *Bodily injury* or property damage caused by a motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
    (b) The operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

**15.** We do not cover any liability assumed under any contract or agreement.

**16.** Regardless of any other provision in this policy, there is no coverage for *punitive or exemplary damages*.

**17.** We do not cover any person or organization while an *owned auto* is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*. This exclusion does not apply to the operation of a *temporary substitute auto* by *you*, a *relative* or any other person using the auto with *your* permission and within the scope of that permission.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as *insureds* with regard to an *owned auto*:

**1.** *You* and *your relatives*;

**2.** Any other person using the auto with *your* permission. The actual use must be within the scope of that permission;

**3.** Any other person or organization for his or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

Section I applies to the following with regard to a *non-owned auto*:

**1.** (a) *You*;

(b) *Your relatives* when operating a *private passenger auto*, *farm auto* or *utility auto* or *trailer*.

Such operation by *you* or *your relatives* must be with the express or implied permission of the owner.

**2.** A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

**2.** The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

**3.** The limit of property damage liability stated in the declarations as applicable is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance. However, it shall be primary if:

(a) The *temporary substitute auto* or other motor vehicle is provided by a duly licensed automobile dealer for demonstration purposes: or

(b) The motor vehicle is a replacement while the insured auto is out of use because of its breakdown, service or repair; or

(c) The motor vehicle is rented or leased from a rental car company.

**CONDITIONS**

The following conditions apply to Section I:

**1.** NOTICE

As soon as possible after an occurrence, notice must be given to us or our authorized agent stating:

(a) The identity of the *insured*;

(b) The time, place and details of the occurrence;

(c) The names and addresses of the injured, and of any witnesses; and

(d) The names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.** ASSISTANCE AND COOPERATION OF THE INSURED

The *insured* will cooperate and assist us, if requested:

(a) In the investigation of the occurrence;

(b) In making settlements;

(c) In the conduct of suits;

(d) In enforcing any right of contribution or indemnity against any legally or responsible person or organization because of *bodily injury* or property damage;

(e) At trials and hearings;

(f) In securing and giving evidence; and

(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**4.** ACTION AGAINST US

No suit will lie against us:

(a) Unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) Until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the *insured* after actual trial; or

(ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

**5.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible. However, our right to repayment is subordinate to the right of a person insured under this policy to be fully compensated.

---

## SECTION II - MEDICAL PAYMENTS
### Protection For You And Your Passengers For Medical Expenses

---

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1. **You** and each **relative** who sustains **bodily injury** caused by accident:
   (a) While **occupying** the **owned auto**; or
   (b) While **occupying** a **non-owned auto** if **you** or **your relative** reasonably believe **you** have the owner's permission to use the auto and the use is within the scope of that permission; or
   (c) When struck as a pedestrian by an auto or **trailer**.

2. Any other person who sustains **bodily injury** caused by accident while **occupying** the **owned auto** while being used by **you**, a resident of **your** household, or other persons with **your** permission.

## EXCLUSIONS

### Section II Does Not Apply:

1. There is no coverage for **bodily injury** arising out of the ownership, maintenance, or use of any motor vehicle while being used:
   (a) To carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) For **ride-sharing**.
   Further, this exclusion will not apply to ordinary car pools. An ordinary car pool is one where:
      (i) an **insured** receives no payment for using a vehicle for a car pool ride; or
      (ii) an **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.
   This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle.

2. There is no coverage for an **insured** while **occupying** a vehicle located for use as a residence or premises.

3. **You** and **your relatives** are not covered for **bodily injury** sustained while **occupying** or when struck by:
   (a) A farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
   (b) A vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the **auto business**, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for **bodily injury** sustained due to **war**.

6. The United States of America or any of its agencies are not covered as an **insured**, a third party beneficiary, or otherwise.

7. There is no coverage for **bodily injury** that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

8. Section II does not apply to:
   (a) **Bodily injury** caused by a motor vehicle in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
   (b) The operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

9. There is no coverage for **bodily injury** while an **owned auto** is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** permission. The actual use must be within the scope of that permission.

## LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations is the limit we will pay for all costs incurred by or on behalf of each person who sustains **bodily injury** in one accident. This applies regardless of the number of persons insured or the number of autos or **trailers** to which this policy applies.

## OTHER INSURANCE

If the **insured** has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains **bodily injury** while **occupying** a vehicle **you** do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply to this Coverage:

1. NOTICE

    As soon as possible after an accident, notice must be given to us or our authorized agent stating:

    (a)  The identity of the **insured**;

    (b)  The time, place and details of the accident; and

    (c)  The names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS

    If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached **trailer** are considered to be one auto.

3. ACTION AGAINST US

    Suit will not lie against us unless the **insured** has fully complied with all the policy terms.

4. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

    As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

    The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

    We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the **insured**.

5. SUBROGATION

    When payment is made under this policy, we will be subrogated to all the **insured's** rights of recovery against others. The **insured** will help us to enforce these rights. The **insured** will do nothing after **loss** to prejudice these rights. This means we will have the right to sue for or otherwise recover the **loss** from anyone else who may be held responsible. However, our right to repayment is subordinate to the right of a person insured under this policy to be fully compensated.

---

## SECTION III-PHYSICAL DAMAGE COVERAGES
### Your Protection For Loss Or Damage To Your Car

---

**DEFINITIONS**

The definitions of the terms **auto business**, **farm auto**, **non-owned auto**, **personal vehicle sharing program**, **private passenger auto**, **ride-sharing**, **relative**, **temporary substitute auto**, **transportation network company**, **utility auto**, **you**, **your** and **war** under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. **Actual cash value** is the replacement cost of the auto or property less **depreciation** or **betterment**.

2. **Betterment** is improvement of the auto or property to a value greater than its pre-loss condition.

3. **Collision** means **loss** caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4. **Custom parts or equipment** means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a)  Are permanently installed or attached; or

    (b)  Alter the appearance or performance of a vehicle.

    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

5. **Depreciation** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

6. **Insured** means:

    (a)  Regarding the **owned auto**:

    (i)  **you** and **your relatives**;

    (ii)  a person or organization maintaining, using or having custody of the auto with **your** permission, if his use is within the scope of that permission.

(b) Regarding a **non-owned auto**; **you** and **your relatives**, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7. **Loss** means direct and accidental loss of or damage to:
   (a) The auto, including its equipment; or
   (b) Other insured property.

8. **Owned auto** means:
   (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
   (b) A **private passenger auto**, **farm auto** or **utility auto** or a **trailer**, ownership of which is acquired by **you** during the policy period; if
      (i) it replaces an **owned auto** as described in (a) above; or
      (ii) we insure all **private passenger autos**, **farm autos**, **utility autos** and **trailers** owned by **you** on the date of such acquisition and **you** request us to add it to the policy within 30 days afterward;
   (c) A **temporary substitute auto**.

9. **Trailer** means a trailer designed to be towed by a **private passenger auto** and not used as a home, residence, office, store, display or passenger trailer. **Trailer** does not mean a trailer with built-in sleeping facilities designed for recreational or camping use.

## LOSSES WE WILL PAY FOR YOU

### Comprehensive (Excluding Collision)

1. We will pay for each **loss**, less the applicable deductible, caused other than by **collision**, to the **owned auto** or **non-owned auto**. This includes breakage glass and **loss** caused by:

   | | |
   |---|---|
   | (a) Missiles; | (j) Windstorm; |
   | (b) Falling objects; | (k) Hail; |
   | (c) Fire; | (l) Water; |
   | (d) Lightning; | (m) Flood; |
   | (e) Theft; | (n) Malicious mischief; |
   | (f) Larceny; | (o) Vandalism; |
   | (g) Explosion; | (p) Riot; or |
   | (h) Earthquake; | (q) Civil commotion. |
   | (i) Colliding with a bird or animal; | |

   At the option of the **insured**, breakage of glass caused by **collision** may be paid under the Collision Coverage, if included in the policy.

2. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

1. We will pay for **collision loss** to the **owned auto** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

3. No deductible will apply to **loss** to an **owned auto** or **non-owned auto**, provided at the time of **loss**:
   (a) The **owned auto** or **non-owned auto** is covered by both the Uninsured Motorists and Collision coverages of this policy; and
   (b) The **loss** is caused by an uninsured auto whose operator:
      (i) is positively identified; and
      (ii) is solely at fault for the **loss**.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the **loss**.

   Reimbursement will not exceed $25 per day, or $750 per **loss**.

2. We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

**EXCLUSIONS**

**Section III Does Not Apply:**

1. There is no coverage for any motor vehicle used:
   (a) To carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or
   (b) For **ride-sharing**.
   However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:
   (i) an **insured** receives no payment for using a vehicle for a car pool ride; or
   (ii) an **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

2. **Loss** due to **war** is not covered.

3. We do not cover **loss** to a **non-owned auto** when used by the **insured** in the **auto business**.

4. There is no coverage for **loss** caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by **collision**, are not covered.

6. **Loss** due to radioactivity is not covered.

7. **Loss** to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8. We do not cover **loss** to any radar detector.

9. We do not cover **trailers** when used for business or commercial purposes with vehicles other than **private passenger autos**, **farm autos** or **utility autos**.

10. There is no coverage for **loss** that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

11. We do not cover **loss** for **custom parts or equipment**, in excess of $1000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

12. Section III does not apply to any **loss** caused by:
    (a) A motor vehicle driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized: or
    (b) the operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

13. There is no coverage for any liability assumed under any contract or agreement.

14. There is no coverage for **loss** or damage resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an **owned auto**.

15. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by **you**, a **relative** or a permissive user of the vehicle in illegal activity.

16. There is no coverage under this Section for any person or organization while an **owned auto** is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or to any other person using the **temporary substitute auto** with **your** permission. The actual use must be within the scope of that permission.

**LIMIT OF LIABILITY**

The limit of our liability for **loss**:

1. Is the **actual cash value** of the property at the time of the **loss**;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of **loss**, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value claimed to result from the **loss**. Although you have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At **your** request, we will identify a repair facility that will perform the repairs at the prevailing competitive price;

3. To a **trailer** not owned by **you** is $500;
4. For **custom parts or equipment** is limited to the **actual cash value** of the **custom parts or equipment**, not to exceed the **actual cash value** of the vehicle. However, the most we will pay for **loss** to **custom parts or equipment** is $1,000, unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

**Actual cash value** of property will be determined at the time of the **loss** and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

## OTHER INSURANCE

If the **insured** has other insurance against a **loss** covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle **you** do not own shall be excess over any other valid and collectible insurance. However, it shall be primary if:

(a) The **temporary substitute auto** or other motor vehicle is provided by a duly licensed automobile dealer for demonstration purposes; or

(b) As a replacement while the insured auto is out of use because of breakdown, service or repair; or

(c) The motor vehicle is rented or leased from a rental car company.

## CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1. NOTICE

   As soon as possible after a **loss**, notice must be given to us or our authorized agent stating:

   (a) The identity of the **insured**;

   (b) A description of the auto or **trailer**;

   (c) The time, place and details of the **loss**; and

   (d) The names and addresses of any witnesses.

   In case of theft, the **insured** must promptly notify the police.

   In the case of theft of the entire vehicle, the **insured** must promptly notify the police that the vehicle was stolen. To be eligible as a covered **loss**, the police report must acknowledge and classify the report as theft of a motor vehicle. The **insured** must cooperate fully with the police investigation, with the claim investigation, and with the prosecution of any person(s) charged with theft, and with any civil suit brought by us against the person(s) responsible to recover for the **loss**.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos or **trailers**, the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE INSURED

   The **insured** will cooperate and assist us, if requested:

   (a) In the investigation of the **loss**;

   (b) In making settlements;

   (c) In the conduct of suits;

   (d) In enforcing any right of subrogation against any legally responsible person or organization;

   (e) At trials and hearings;

   (f) In securing and giving evidence; and

   (g) By obtaining the attendance of witnesses.

4. ACTION AGAINST US

   Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of **loss** is determined.

   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If **you** ask us immediately after a **loss** to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. **You** may purchase the salvage from us if **you** wish.

5. INSURED'S DUTIES IN EVENT OF LOSS

   In the event of **loss** the **insured** will:

   (a) Protect the auto, whether or not the **loss** is covered by this policy. Further **loss** due to the **insured's** failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.

   (b) File with us, within 91 days after **loss**, his sworn proof of loss including all information we may reasonably require. This condition is waived unless we furnish forms of proof of loss to any person claiming to have a **loss** under this policy for completion by that person within 20 days after a **loss** has been reported to us.

   (c) At our request, the **insured** will exhibit the damaged property.

**6.** APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, request an appraisal of the *loss*. If both parties agree to the appraisal, each will select a competent appraiser. The appraisers will select a competent and disinterested umpire.

The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*.

We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

This condition is voluntary and non-binding on both parties.

**7.** PAYMENT OF LOSS

We may at our option:

(a) Pay for the *loss*; or

(b) Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

**8.** NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

**9.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible. However, our right to repayment is subordinate to the right of a person insured under this policy to be fully compensated.

**10.** ASSIGNMENT

With respect to Section III, Physical Damages Coverage, an assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid. Moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV- UNINSURED MOTORISTS COVERAGE
### Protection For You And Your Passengers For Injuries Caused By Uninsured And Hit-And-Run Motorists

### DEFINITIONS

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

**1.** *Hit-and-run auto* is a motor vehicle causing *bodily injury* to an *insured* through physical contact with him or with an auto he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(a) Reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

(b) Files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

(c) Makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

**2.** *Insured* means:

(a) *You*;

(b) *Relatives* of (a) above if residents of his household;

(c) Any other person while *occupying* an *owned auto* with *your* consent or operating an *owned auto* with a reasonable belief that person has your permission to do so;

(d) Any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

If there is more than one *insured*, our limit of liability will not be increased.

3. **Insured auto** is an auto:
   (a) Described in the declarations and covered by the bodily injury liability coverage of this policy;
   (b) Temporarily substituted for an **insured auto** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or
   (c) Operated by **you** or **your** spouse if a resident of the same household.
   But the term **insured auto** does not include:
   (i) an auto used to carry passengers or goods for hire, except in a car pool;
   (ii) an auto being used without the owner's permission; or
   (iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an **insured**.
4. **Occupying** means in, upon, entering into or alighting from.
5. **Punitive or exemplary damages** means damages that are imposed to punish a wrongdoer and to deter others from similar conduct.
6. **State** includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.
7. **Uninsured auto** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.
   The term **uninsured auto** does not include:
   (a) An **insured auto**;
   (b) An auto owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
   (c) An auto owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;
   (d) A land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; or
   (e) A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under the Uninsured Motorists Coverage we will pay damages for **bodily injury** caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** or **hit-and-run auto** arising out of the ownership, maintenance or use of that auto.

## EXCLUSIONS

### Section IV Does Not Apply:

1. This Coverage does not apply to **bodily injury** to an **insured** if the **insured** or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.
2. **Bodily injury** to an **insured** while **occupying** or through being struck by an **uninsured auto** owned by an **insured** or a **relative** is not covered.
3. The Uninsured Motorists Coverage will not benefit any workers' compensation insurer, self insurer, or disability benefits insurer.
4. We do not cover the United States of America or any of its agencies as an **insured**, a third party beneficiary or otherwise.
5. We do not cover any person while **occupying** a vehicle described in the declarations on which Uninsured Motorists Coverage is not carried.
6. Regardless of any other provision of this policy, there is no coverage for **punitive or exemplary damages** under the Uninsured Motorists Coverage of this policy.
7. **Bodily injury** that results from nuclear exposure or explosion resulting fire, radiation or contamination is not covered.
8. This coverage does not apply to any liability assumed under any contract or agreement.
9. This coverage does not apply to damage caused by an **insured's**;
   (a) Participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
   (b) Operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

10. There is no coverage for **bodily injury** under this Section for any person while any motor vehicle is being used:

    (a) To carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

    (b) For **ride-sharing**.

However, a vehicle used in an ordinary car pool is covered. An ordinary car pool is one where:

    (i) an **insured** receives no payment for using a vehicle for a car pool ride; or

    (ii) an **insured** receives only reimbursement for expenses for using a vehicle for a car pool ride, the reimbursement an **insured** receives for providing the car pool ride does not exceed the reasonable cost of gas and depreciation for the distance traveled, and the reimbursement received by an **insured** is not required to be reported for income tax purposes.

This exclusion does not apply to **you** or any **relative** while a passenger and not operating the motor vehicle.

11. There is no coverage under this Section for any person or organization while any motor vehicle is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**. This exclusion does not apply to a **temporary substitute auto** operated by **you**, a **relative**, or any other person while **occupying** a **temporary substitute auto** with your consent or operating a **temporary substitute auto** with a reasonable belief that person has **your** permission to do so.

## LIMITS OF LIABILITY

Regardless of the number of autos or **trailers** to which this policy applies:

1. The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the limit of our liability for all damages, including those for care or loss of services, due to **bodily injury** sustained by one person as the result of one accident.

2. The limit of liability stated in the declarations as applicable to "each occurence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of one accident.

3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss.

The amount payable under this Coverage will be reduced by all amounts:

    (a) Paid by or for all persons or organizations liable for the injury; or

    (b) Paid or payable under any workers' compensation law, disability benefits law or any similar law.

## OTHER INSURANCE

When an **insured occupies** an auto not described in this policy, this insurance is excess over any other similar insurance available to the **insured** and the insurance which applies to the **occupied** auto is primary.

However, this insurance shall be primary if:

(a) The **temporary substitute auto** or other motor vehicle is provided by a duly licensed automobile dealer for demonstration purposes; or

(b) As a replacement while the **insured auto** is out of use because of its breakdown, service or repair; or

(c) The motor vehicle is rented or leased from a rental car company.

Except as provided above, if the **insured** has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the **insured** has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

## TRUST AGREEMENT

When we make a payment under this Coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the **insured** recovers from any person or organization legally responsible for the **bodily injury**.

2. The **insured** will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3. At our written request, the **insured**, in his own name, will take, through a designated representative, appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The **insured** will pay us out of the recovery for our expenses, costs and attorneys' fees.

4. The **insured** will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured Motorists Coverage:

**1.** NOTICE

As soon as possible after an accident, notice must be given to us or our authorized agent stating:

(a) The identity of the *insured*;

(b) The time, place and details of the accident; and

(c) The names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this Coverage, he must immediately provide us with a copy of the pleadings.

**2.** ASSISTANCE AND COOPERATION OF THE INSURED

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

**3.** ACTION AGAINST US

Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

**4.** PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

**5.** PAYMENT OF LOSS

Any amount due is payable:

(a) To the *insured* or his authorized representative;

(b) If the *insured* is a minor, to his parent or guardian; or

(c) If the *insured* is deceased, to his surviving spouse; otherwise

(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

**6.** SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible. However, our right to repayment is subordinate to the right of a person insured under this policy to be fully compensated.

---

## SECTION V- GENERAL CONDITIONS

**DEFINITIONS**

The definitions of the terms under Section I also apply to Section V.

These conditions apply to all Coverages in this policy.

**1.** TERRITORY - POLICY PERIOD

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance by payment of the required premium prior to the expiration date. Each period will begin and expire as stated in the declarations.

**2.** PREMIUM

When you dispose of, acquire ownership of, or replace a *private passenger auto*, *farm auto* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**3. CHANGES**

The terms and provisions of this policy cannot be waived or changed, except by an amendment and/or endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) That *you* will cooperate with us in determining if this information is correct and complete.

(c) That *you* will notify us of any changes in this information.

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

**4. ASSIGNMENT**

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover:

(a) *Your* surviving spouse;

(b) The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties;

(c) Any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate; and

(d) Under the Medical Payments Coverage, a person who was a *relative* at the time of *your* death.

**5. CANCELLATION BY THE INSURED**

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed pro-rata.

**6. CANCELLATION BY US**

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective and the reason for cancellation.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 20 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled by us, *you* may be entitled to a premium refund. The premium refund, if any, will be computed pro-rata. Payment or tender of unearned premium is not a condition of cancellation.

**7. CANCELLATION BY US IS LIMITED**

After this policy has been in effect for 60 days or, if the policy is a renewal, effective immediately, we will not cancel except for any of the following reasons:

(a) *You* do not pay the initial or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.

(b) *You* or any driver of the insured vehicle is convicted of:

(i) driving while intoxicated; or

(ii) homicide or assault arising out of the use of a motor vehicle; or

(iii) three separate convictions of speeding and/or reckless driving during the policy period and including three months prior to the effective date of the policy.

(c) *Your* driver's license or motor vehicle registration or that of any other operator who either resides in *your* household or who customarily operates an auto insured under this policy has been under suspension or revocation during the policy period, or if the policy is a renewal, during the policy period or the 180 days immediately prior to its effective date.

(d) Fraud or misrepresentation of a material fact, the knowledge of which would have caused us to decline to issue the policy. However, we will not rescind bodily injury or property damage liability coverage under this policy for fraud or misrepresentation with respect to any injury to a third party when suffered as a result of *your* negligent operation of a motor vehicle.

Failure to cancel for any of the reasons above shall not obligate us to renew this policy.

**8.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to  **you**, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a)  **You** do not pay any premium as we require to renew this policy.

(b)  **You** have informed us or our agent that  **you** wish the policy to be cancelled or not renewed.

(c)  **You** do not accept our offer to renew or  **you** refuse to provide us with renewal classification and rating information as we may require.

**9.** OTHER INSURANCE

If other insurance is obtained on  **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**10.** DIVIDEND PROVISION

**You** may be entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

**11.** DECLARATIONS

By accepting this policy,  **you** agree that:

(a)  The statements in  **your** application and in the declarations are  **your** agreements and representations;

(b)  This policy is issued in reliance upon the truth of these representations; and

(c)  This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**12.** FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a)  At the time of application;

(b)  At any time during the policy period; or

(c)  In connection with the presentation or settlement of a claim.

However, we will not rescind bodily injury or property damage liability coverage under this policy for fraud or misrepresentation with respect to any injury to a third party when suffered as a result of  **your** negligent operation of a motor vehicle.

**13.** EXAMINATION UNDER OATH

An  **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**14.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Arkansas are amended to conform to those statutes.

**15.** DISPOSAL OF VEHICLE

If  **you** relinquish possession of a leased vehicle or if  **you** sell or relinquish ownership of an  **owned auto**, any coverage provided by this policy for that vehicle will terminate on the date and at the time  **you** do so.

**16.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Arkansas.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

**1.** SPECIAL ENDORSEMENT UNITED STATES GOVERNMENT EMPLOYEES

**A.** Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using

    1.   Motor vehicles owned or leased by the United States Government or any of its agencies, or

    2.   Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph B. below, we will pay sums **you** are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this Coverage:

    1.   A $100 deductible applies to each occurrence.

    2.   For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

        a.   The ***actual cash value*** of the property at the time of the occurrence; or

        b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

        c.   Two months basic pay of the ***insured***; or

        d.   The limit of Property Damage liability coverage stated in the declarations.

    3.   For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

        a.   The ***actual cash value*** of the property at the time of the occurrence; or

        b.   The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

        c.   The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.



GEICO Choice Insurance Company
Policy Number: 6009-27-47-69

The policy contract, Declarations, and any amendments or endorsements issued to form a part thereof, completes the policy.

**In Witness Whereof**, the company has caused this Policy to be executed and attested.

W. C. E. Robinson
Secretary

Todd A. Combs
President



GEICO Choice Insurance Company
Policy Number: 6009-27-47-69

**Automobile Policy Amendment**
**UNINSURED MOTORIST-**
**PROPERTY DAMAGE COVERAGE**
**ARKANSAS**

Your policy provisions are amended as follows:

**DEFINITIONS**

1. *Farm auto* means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.
2. *Hit-and-run auto* is a motor vehicle causing *property damage* to an *insured auto* through physical contact with that vehicle and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:
   (a) Reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
   (b) Files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and
   (c) Makes available for inspection, at our request, the *insured auto*.
3. *Insured* means:
   (a) *You*;
   (b) Any person who is entitled to recover damages because of *property damage* sustained by an *insured* under (a) above;
   (c) Any other person, not excluded from coverage under the policy, using the *insured auto* with the owner's permission. The actual use must be within the scope of the permission given by the owner.
   If there is more than one *insured*, our limits of liability will not be increased.
4. *Insured auto* is an auto:
   (a) Described in the declaration and covered by the liability coverages of this policy;
   (b) Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
   (c) A *private passenger auto*, *farm auto*, or *utility auto*, ownership of which *you* acquire during the policy period, if
      (i) It replaces a vehicle described in this policy for which a premium is shown for these coverages or a *trailer* owned by *you*;
      (ii) We insure all *private passenger autos*, *farm autos*, and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later.
   (d) A *non-owned auto* used by the individual named in the declarations or his or her if a resident of the same household.
   But the term *insured auto* does not include:
   (i) An auto used to carry passengers or goods for hire except in a car pool;
   (ii) An auto being used without the owner's permission; or
   (iii) Under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.
5. *Private Passenger auto* means a four wheel private passenger, station wagon or jeep-type auto.
6. *Property damage* means damage to or destruction of an auto owned by *you* and covered by the liability coverages of this policy. *Property damage* includes a reasonable amount for the loss of use of the auto.
7. *Punitive or Exemplary Damage* means damage that is imposed to punish the wrongdoer and to deter others from similar conduct.
8. *Ride-sharing* means the use of any vehicle by any *insured* in connection with a *transportation network company* from the time an *insured* logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an *insured* logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).
9. *Trailer* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger auto*, *farm auto* or *utility auto*.
10. *Transportation network company* means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or fee.

11. **Uninsured auto** is a motor vehicle which:
   a) Has no property damage liability bond, policy of insurance or cash or securities on file to cover **property damage** at the time of the accident, or;
   b) Has property damage liability insurance in effect at the time of the accident but the insurer of the vehicle becomes insolvent or denies coverage.

   The term **uninsured auto** does not include:
   (a) An **insured auto**;
   (b) A motor vehicle owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
   (c) A motor vehicle owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;
   (d) A land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises;
   (e) A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

12. **Utility auto** means a vehicle, other than a **farm auto** with a gross vehicle weight of 15,000 pounds or less of the pick up body, van or panel truck type not used for commercial purposes.

13. **You** or **your** means only the individual(s) named in the **Declaration Page** as **Named Insured** and his or her spouse if a resident of the same household.

   **You** and **your** does not include any individual(s) named in the **Declarations Page** as:
   (a) **Additional Drivers**;
   (b) **Additional Driver**; or
   (c) Any other individual(s).

## LOSSES WE PAY

Under this Coverage we will pay for **property damage** caused by accident involving physical contact with an **insured auto** for which the **insured** is legally entitled to recover from the owner or operator of an **uninsured auto** or **hit-and-run auto** arising out of the ownership, maintenance or use of that auto.

## EXCLUSIONS

When this Coverage Does Not Apply

1. This coverage does not apply if the **insured** or his legal representative has made a settlement or has been awarded a judgment on his claim without our prior written consent or if we are not a party to litigation involving the **insured** and the uninsured motorist.
2. This coverage shall not apply to the benefit of any property insurer.
3. This coverage does not apply to the first two hundred dollars of the total amount of all **property damage** as the result of any one accident. The deductible does not apply if:
   (a) Collision Coverage is also provided on the **insured auto**, and
   (b) The operator of the other vehicle has been positively identified and is solely at fault.
4. This coverage does not apply to loss or damage to personal property located in the **insured auto**.
5. We do not cover the United States of America or any of its agencies as an **insured**, a third party beneficiary or otherwise.
6. This coverage does not apply to **property damage** to the **insured** if the collision does not involve actual direct physical contact between the **insured** and the **uninsured auto** or **hit-and-run auto**.
7. Regardless of any other provisions of this policy, there is no coverage for **punitive or exemplary damages.**
8. This coverage does not apply to **property damage** to the **insured auto** that results from nuclear exposure or explosion including resulting fire, radiation or contamination.
9. We do not cover **property damage** caused by:
   (a) A motor vehicle driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or
   (b) Operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.
10. We do not cover any liability assumed under any contract or agreement.
11. This coverage does not apply to **property damage** arising out of the ownership, maintenance, or use of any motor vehicle while being used for **ride-sharing**.
12. There is no coverage under this Section for any person or organization while any **owned auto** is operated, maintained or used as part of personal vehicle sharing facilitated by a **personal vehicle sharing program**. This exclusion does not apply to a **temporary substitute auto** operated by **you** or a **relative**.

**LIMIT OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

1.  The limit of liability for Uninsured Motorists Property Damage Coverage stated in the declarations is our total limit of liability for all damages to the property of one or more *insureds* as the result of any one accident.
2.  When coverage is afforded by two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

    If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

    The amount payable under this Coverage will be reduced by all amounts:

    (a)  Paid by or for all persons or organizations liable for the *property damage* to the *insured auto*;

    (b)  Paid or payable under any property insurance policy.

**OTHER INSURANCE**

This insurance shall be excess over other valid and collectible insurance, except that it shall be primary to any insurance or self-insurance maintained by a duly licensed automobile dealer or rental company.

**TRUST AGREEMENT**

When we make a payment under this coverage:

1.  We will be entitled to repayment of that amount out of any settlement or judgment any *insured* recovers from any person or organization legally responsible for the *property damage*.
2.  Any *insured* claiming benefits will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for his damages.
3.  At our written request, any *insured* claiming benefits, in his own name, will take through a designated representative appropriate action necessary to recover payment for damages from the legally responsible person or organization. That *insured* will pay us out of the recovery for our expenses, costs and attorney's fees.
4.  Any *insured* claiming benefits will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

1.  NOTICE

    As soon as possible after an accident, notice must be given to us or our authorized agent stating:

    (a)  The identity of the *insured*;

    (b)  The time, place and details of the accident, and

    (c)  The names and addresses of any witnesses.

    If any *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2.  ASSISTANCE AND COOPERATION OF THE INSURED

    After we receive notice of a claim, we may require any *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require that *insured* to make that person or organization a defendant in any action against us.

3.  ACTION AGAINST US

    Suit will not lie against us unless any *insured* claiming benefits or his legal representative have fully complied with all the policy terms.

4.  PROOF OF CLAIM

    The *insured* or other person making a property damage claim shall file a proof of loss with us as soon as practicable. The proof of loss shall be a sworn statement as to the interest of the *insured* and anyone else in the property, any encumbrances upon the property, actual cash value at the time of loss, and description and amount of all other insurance covering the property. Upon our request, the *insured* will show us the damaged property.

    In the event of a property damage loss, the *insured* shall protest the auto from further loss. Further loss due to failure to protect will be covered. We will pay for reasonable expenses incurred for the protection of the auto.

5.  PAYMENT OF LOSS Any amount is payable:

    (a)  To the *insured* or his authorized representative;

    (b)  If the *insured* is a minor to his parent or guardian; or

    (c)  If the *insured* is deceased, to his surviving spouse; otherwise

    (d)  To a person authorized by law to receive payment; or to a person legally entitled to recover payment for the damages.

    We may, at our option, pay an amount due in accordance with (d) above.



**Policy Number: 6009-27-47-69**

# Automobile Policy Amendment
## Underinsured Motorist Coverage
## Arkansas

*Your* policy is amended to provide Underinsured Motorist Coverage subject to the following:

**DEFINITIONS**

The definitions of terms in Section I. Liability Coverages, of *your* policy apply to this Coverage except for the following special definitions:

1. **Insured** means:
   (a) *You*;
   (b) *Your relatives*;
   (c) Any other person *occupying* an *insured auto*; or
   (d) Any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b) and (c) above.
   If there is more than one *insured*, our limit of liability will not be increased.

2. **Insured Auto** is an auto:
   (a) Described in the declarations and covered by the bodily injury liability coverage of this policy.
   (b) Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.
   (c) Operated by *you* or *your* spouse if a resident of the same household.
   But the term *insured auto* does not include:
   (i) an auto used to carry passengers or goods for hire except in a car pool.
   (ii) an auto being used without the owner's permission.
   (iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured.*

3. **Occupying** means:
   (a) In;
   (b) Upon;
   (c) Entering into; or
   (d) Alighting from.

4. **State** includes the District of Columbia, the territories and possessions of the United States and the Provinces of Canada.

5. **Underinsured Motor Vehicle** means:
   A motor vehicle for which the total limit of all bodily injury insurance policies or bonds applicable at the time of the accident is less than the damages *you* have incurred.
   The term *underinsured motor vehicle* does not include a motor vehicle:
   (a) Which is an *insured auto*;
   (b) Owned or operated by a self-insurer under any applicable motor vehicle law.
   (c) Owned or operated by:
   (i) the United States of America;
   (ii) any national government;
   (iii) a *state*; or
   (iv) a political sub-division of any such government and its agencies.
   (d) Operated on crawler treads.
   (e) While located for use as a residence or premises.
   (f) Designed for use mainly off public roads except while used on public roads.
   (g) To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   (i) denies coverage; or
   (ii) become insolvent
   (h) For which neither a liability bond or policy applies at the time of the accident.

6. **Punitive or exemplary damages** mean damages that are imposed to punish a wrongdoer and to deter others from similar conduct.

**LOSSES WE PAY**

We will also pay damages the *insured* is legally entitled to recover for *bodily injury* caused by accident and arising out the ownership, maintenance or use of an *underinsured motor vehicle*. However, we will not pay until the total of all bodily injury liability insurance available has been exhausted by payment of judgments or settlements.

**EXCLUSIONS:**

1. *Bodily injury* to an *insured* while *occupying* or through being struck by an *underinsured motor vehicle* owned by an *insured* or a *relative* is not covered.

2. The Underinsured Motorist Coverage will not benefit any worker's compensation insurer, self-insurer or disability benefits insurer.

3. We do not cover the United States of America or any of its agencies as an *insured*, a third party beneficiary or otherwise.

4. We do not cover any person while *occupying* a vehicle described in the declarations on which Underinsured Motorist Coverage is not carried.

5. Regardless of any other provision of this policy, there is no coverage for *punitive or exemplary damages*.

6. *Bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

7. There is no coverage for *bodily injury* under this Section for any person while any motor vehicle is being used for *ride-sharing*.

   This exclusion does not apply to *you* or any *relative* while a passenger and not operating a motor vehicle.

8. This coverage does not apply to damage caused by an *insured's*:

   (a) Participation in or preparation for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized; or

   (b) Operation or use of a motor vehicle on a track designed primarily for racing or high speed driving. This does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving or any competitive driving.

9. This coverage does not apply to any liability assumed under any contract or agreement.

10. There is no coverage under this Section for any person or organization while an *owned auto* is operated, maintained or used as part of personal vehicle sharing facilitated by a *personal vehicle sharing program*. This exclusion does not apply to a *temporary substitute auto* operated by *you*, a *relative*, or any other person while *occupying* a *temporary substitute auto* with *your* consent or operating a *temporary substitute auto* with a reasonable belief that person has *your* permission to do so.

**LIMIT OF LIABILITY**

Regardless of the number of:

   a. Insured vehicles involved in the accident;

   b. Persons covered;

   c. Claims made;

   d. Vehicles or premiums shown in the declarations; or

   e. Premiums paid:

   1. The limit of liability for Underinsured Motorist Coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident.

   2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of one accident.

   3. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

      If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

   The amount payable under this Coverage will be reduced by all amounts:

   (a) Paid or payable under any worker's compensation law, disability benefits law or any similar law.

   (b) Paid or payable under any Underinsured Motorist Coverage which is primary to this insurance.

**OTHER INSURANCE**

When an *insured occupies* an auto not described in this policy, this insurance is excess over any other similar insurance available to the *insured*. The insurance which applies to the *occupied* auto is primary.

However, this insurance shall be primary if:

    (a) The *temporary substitute auto* or other motor vehicle is provided by a duly licensed automobile dealer for demonstration purposes; or

    (b) As a replacement while the *insured auto* is out of use because of its breakdown, service or repair; or

    (c) The motor vehicle is rented or leased from a rental car company

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the *insured* has other insurance against a loss covered by the Underinsured Motorist provisions of this amendment, we will not be liable for more than our pro-rata share of the total coverage available.

**TRUST AGREEMENT**

Whenever we make a payment under this coverage and have not waived our rights by failing, within 30 days of receipt of any written notice of a tentative agreement to settle for the liability limits, to make a payment equal to the tentative settlement amount:

1. We will be entitled to recoup our payment under this coverage out of any settlement the *insured* recovers from any person or organization legally responsible for the *bodily injury*.

2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery. He will do nothing after the loss to prejudice these rights.

3. At our written request, the *insured*, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization. The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.

    However, we will not ask the *insured* to act to recover payment from a legally responsible person or organization whose insurer is or becomes insolvent.

4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

5. Our right of recovery exists only after the *insured* has recovered in excess of his damages.

**ADDITIONAL DUTIES**

This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent unless:

a. We are notified in writing by **certified mail, return receipt requested**, that a tentative agreement to settle for the liability limits of the owner or operator of the other vehicle has been reached. Such written notice shall include:

    (1) Written documentation of pecuniary losses incurred. This includes copies of all medical bills;

    (2) Written authorization or court order authorizing us to obtain medical reports from all employers and medical providers; and

    (3) Written confirmation from the tortfeasor's (party at fault) liability insurer as to the amount of the alleged tortfeasor's liability limits and the terms of the tentative settlement. This shall in no event include any component sum representing *punitive or exemplary damages*; and

b. We did not make a payment equal to the tentative settlement amount to our *insured* within 30 days of our receipt of that written notice.

    In the event that we are the only provider of the tortfeasor's liability insurance, the requirements of a. and b., above, are hereby waived. *You* may submit *your* underinsured motorist claim at any time after we settle *your* liability policy claim.

**CONDITIONS**

The following conditions apply only to the Underinsured Motorist Coverage:

1. NOTICE

    As soon as possible after an accident, notice must be given to us or our authorized agent stating:

    (a) The identity of the *insured*;

    (b) The time, place and details of the accident; and

    (c) The names and addresses of the injured, and of any witness.

    If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2.  ASSISTANCE AND COOPERATION OF THE INSURED

After we receive notice of claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

3.  ACTION AGAINST US

Suit will not lie against us unless the *insured* and his legal representative have fully complied with all the policy terms.

4.  PROOF OF CLAIM-MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claims must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The *insured* will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

5.  PAYMENT OF LOSS

Any amount due is payable:

(a)  To the *insured* or his authorized representative;

(b)  If the *insured* is a minor to his parent or guardian; or

(c)  If the *insured* is deceased, to his surviving spouse; otherwise

(d)  To a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

We may, at our option, pay any amount due in accordance with (d) above.

# GEICO.

**Automobile Policy Endorsement**
**Emergency Road Service Coverage**

GEICO Choice Insurance Company
Policy Number: 6009-27-47-69
Effective Date: 09-29-21

The Policy Number and Effective Date need be completed only when this endorsement is issued after the effective date of the policy.

**Your** policy provisions are amended as follows:

The following coverage is added if "Emergency Road Service" appears in the "Coverages" space on the Declarations page and a premium is shown.

## SECTION III - PHYSICAL DAMAGE COVERAGES

## LOSSES WE WILL PAY

The following is added after the last sentence under **LOSSES WE WILL PAY**:

**Emergency Road Service Coverage**

If an **owned auto** or **non-owned auto** becomes disabled, we will determine and pay reasonable and customary expenses an **insured** incurs for the following:

1. Battery jump start or labor to install a new battery purchased at the **insured's** expense, performed where the **owned auto** or **non-owned auto** became disabled;
2. Lockout services up to $100 per lockout if keys to the **owned auto** or **non-owned auto** are lost, broken or accidentally locked in the **owned auto** or **non-owned auto**. Lockout services does not include the cost to repair, replace, or reprogram any lost, stolen or damaged electronic or digital keys, including, but not limited to, key fobs;
3. Towing from where the **owned auto** or **non-owned auto** became disabled to the **nearest** repair facility where the necessary repairs can be made as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;
4. Winching the **owned auto** or **non-owned auto** as long as it can be safely reached from a normally traveled road by a service vehicle with automobile servicing equipment operated by one person;
5. Delivery of gas. WE DO NOT PAY FOR THE COST OF THE GAS;
6. Changing a flat tire with the **insured's** operable spare at the location where the **owned auto** or **non-owned auto** became disabled.

## EXCLUSIONS

The following additional exclusions apply under this endorsement:
We will not provide coverage under this endorsement for:

1. More than one reimbursement per disablement.
2. The cost of gas, oil, batteries, or tire(s).
3. The delivery of air, inflation of a tire(s), or patching of a tire(s).
4. Any parts, labor, fluids or other materials or charges necessary for the completion of any repair.
5. Any repairs, labor or towing not specifically listed under **LOSSES WE WILL PAY**-**Emergency Road Service Coverage**.
6. Any vehicle:
   a. driven off established roads;
   b. driven in areas not designed for private passenger automobile traffic;
   c. disabled and/or stuck due to participation in and/or preparation for driving a vehicle through a pit of mud or on a mud track, whether or not prearranged or organized; or
   d. disabled and/or stuck intentionally by any **insured**.
7. Any vehicle arising from impoundment or abandonment.
8. Any vehicle illegally parked or associated with illegal activity.

**OBTAINING SERVICE UNDER THIS ENDORSEMENT**

***You*** may secure service under this endorsement for **Emergency Road Service Coverage** in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, allows the ***insured*** to contact GEICO Emergency Road Service via its mobile app or a toll-free number to initiate the dispatch of a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The ***insured*** need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any charges, expenses, or other fees not specifically addressed above in **LOSSES WE WILL PAY**, or lockout services in excess of $100, are not covered and are at the ***insured's*** own expense.

If we are unable to locate and dispatch a service vendor to an ***insured*** and the ***insured*** hires services without the assistance of a GEICO Emergency Road Service representative, we will reimburse an ***insured*** only as addressed above in **LOSSES WE WILL PAY**.

**HIRED SERVICES**

The second method occurs when the ***insured*** does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $100 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

**CONTINUATION OF COVERAGE**

Upon each renewal period, we reserve the right to review the continuation of the ERS coverage. Removal of the ERS coverage from the policy is subject to underwriting review process at each renewal. All vehicles listed on the policy with the ERS coverage are subject to this review.

This endorsement forms a part of ***your*** policy. It is effective at 12:01 A.M. local time at ***your*** address on the effective date shown above.



**GEICO CHOICE INSURANCE COMPANY**

# Automobile Policy Endorsement
## Rental Reimbursement Endorsement

Policy Number: 6009-27-47-69

We agree with *you* that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage–Rental Reimbursement**

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto.  Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1. The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
2. The *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy.  In that event, the amount payable under this endorsement is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this endorsement.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1. Returned to *you;* or
2. Repaired; or
3. Replaced; or
4. Deemed a total loss by us:
    (a)  Seventy-two (72) hours after we pay the applicable limit of liability under Section III; or
    (b)  Seventy-two (72) hours after our initial settlement offer;
    whichever comes first.

However, when there is a total theft of an *owned auto*, reimbursement for rental charges shall end the earliest of:

1. The date the auto is returned to use if the vehicle is recovered before payment of the total theft claim to *you* or the owner of the vehicle; or if the vehicle is not recovered,
2. Seventy-two (72) hours after our initial settlement offer of the *actual cash value* of the *owned auto*.
3. Seventy-two (72) hours after the failure to provide either a proof of loss or recorded statement if requested by us.

No deductible applies to this coverage.

CONDITIONS

In the case of theft of the entire auto, the *insured* must promptly notify the police that the vehicle was stolen. To be eligible as a covered *loss*, the police report must acknowledge and classify the report as theft of a motor vehicle.  The *insured* must cooperate fully: with the policy investigation, with the prosecution of any person(s) charged with theft and any civil suit brought by us against the person(s) responsible to recover for the *loss*.

The coverage provided by this endorsement is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this endorsement.

W. C. E. Robinson
Secretary

Todd A. Combs
President